In the Matter of CONSOLIDATED FREIGHTWAYS, INC., Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants.

GARRETT FREIGHTLINES, INC., Interstate Motor Lines, Inc., and Ringsby Truck Lines, Inc., Plaintiffs in Intervention,

v.

CONSOLIDATED FREIGHTWAYS, INC., Defendant in Intervention.

Civ. A. No. 38210.

United States District Court
N. D. California, S. D.
Sept. 18, 1959.

Richard J. Archer (of Morrison, Foerster, Holloway, Shuman & Clark), San Francisco, Cal., and Eugene T. Liipfert, Menlo Park, Cal., for plaintiff.

Robert A. Bicks, Acting Asst. Atty. Gen., I.C.C., Robert W. Ginnane, Gen. Counsel, Washington, D. C., for defendant United States.

Frank Loughran, San Francisco, Cal., for intervenors.

Before JERTBERG, Circuit Judge, and WOLLENBERG and BURKE, District Judges.

BURKE, District Judge.

This is an action seeking review of orders of the ICC entered in its Investigation and Suspension Docket No. M–10865, Substituted Service—Consolidated Freightways, Inc.  It is brought under Section 205(g) and (h) of the Interstate Commerce Act (49 U.S.C. § 305(g) and (h), 28 U.S.C. §§ 1336, 1398, 2284, 2321–2325, inclusive; and 5 U.S.C. § 1009. This court has jurisdiction under 28 U.S.C. § 1336 and venue is established in this judicial district under 28 U.S.C. § 1398, the principal office of the plaintiff, Con-

solidated Freightways, Inc., being located at Menlo Park, California, within this judicial district. A three judge District Court was convened pursuant to 28 U.S.C. § 2284 and the matter was heard on June 19, 1959.

The orders of the Interstate Commerce Commission giving rise to this litigation require plaintiff, a motor carrier of property in interstate and foreign commerce, to cancel certain tariff schedules which plaintiff had filed with the Commission.

The tariff schedules in question provided for substitution of the trailer-on-flatcar or piggyback rail service of the Southern Pacific Company for plaintiff's over-the-road line-haul service in the transportation of general commodities between Oakland, Richmond and Roseville, California, on the one hand, and on the other, Sparks, Nevada and Ogden, Utah, and between Sparks and Ogden. They were filed by plaintiff with the Commission on February 20, 1958 and the Commission, acting on the petitions of four motor carriers competing with plaintiff, entered an order suspending operation of the schedules until September 20, 1958 and entered upon an investigation concerning the lawfulness of the rates, charges and regulations contained therein. The investigation proceeding was conducted under modified procedure.[1]

Plaintiff, and the protesting motor carriers, pursuant to the modified procedure, submitted affidavits with respect to the basic facts, and arguments pertaining thereto. Plaintiff submitted a reply to the protestants' statements and arguments.

The investigation was not completed during the statutory seven month suspension period, and on September 20, 1958 the schedules became effective. On November 12, 1958 the Commission, Division 2, issued its report and order in which it found that the schedules in which plaintiff proposed to substitute trailer-on-flatcar rail service of the Southern Pacific Company for plaintiff's over-the-road line-haul service in the transportation of general commodities between Oakland, Richmond, and Roseville, California, on the one hand, and, on the other, Ogden, Utah, and between Sparks, Nevada and Ogden, Utah, had not been shown to be lawful, and that said schedules should be cancelled. The Commission, however, found that the proposed substituted rail service between Oakland, Richmond, and Roseville, on the one hand, and Sparks, on the other hand, was just and reasonable, and did not order the schedules with respect to those points cancelled.

On or about December 19, 1958, plaintiff filed a petition for reconsideration with the Commission, in which it urged that the decision of the Commission, Division 2, should be reversed and the proceeding discontinued. The protestants filed a response to the petition in which it contended that the decision was correct and the petition for reconsideration should be denied. Thereafter, on or about January 27, 1959, plaintiff filed a motion for leave to file an answer to protestants' reply, and for oral argument.

On March 16, 1959, the Commission entered an order in which it stated:

"*It is ordered*, That respondent's petition and request for oral argument be, and it is hereby, denied, for the reasons that the findings and conclusions of Division 2 are fully supported by the evidence of record, and the matters submitted in

---

1. Under modified procedure the facts asserted in the pleadings are sworn to by a person having knowledge thereof in affidavit form, with the view to limiting the matters upon which subsequent oral evidence, if any, will be introduced, but if the cross examination of any witness is desired, any party may make a request for such cross examination, including the basis therefor, which request will be considered and acted upon by the Commission. Modified procedure may be ordered in a proceeding upon the Commission's initiative, or at its discretion, upon request of any of the parties to the proceeding. In this instance the modified procedure was initiated by the Commission.

support of the petition do not present substantial and material reasons to warrant oral argument and reopening the proceeding for reconsideration.

"*It is further ordered,* That respondent's motion be, and it is hereby, overruled for the reason that the matters contained therein are not related to this proceeding.

"*And it is further ordered,* That the order entered in this proceeding on November 12, 1958, which order, pursuant to section 17(8) of the Interstate Commerce Act, was stayed pending disposition of the petition, be, and it is hereby reinstated and modified so as to become effective on May 8, 1959, without change in the requirements of said order."

On May 6, 1959 this Court granted a temporary restraining order which was continued on June 19, 1959 pending final disposition of the case.

The orders in controversy were predicated upon findings of the ICC that plaintiff does not hold motor carrier operating authority between Oakland, Richmond and Roseville, California and Sparks, Nevada, on the one hand, and Ogden, Utah, on the other hand, and is thus precluded from establishing rates for substituted rail service between those points. Plaintiff contends that it does have motor carrier operating authority between the points involved and that the Commission's finding to the contrary amounts to a cancellation, or partial revocation, of plaintiff's operating authority without observing the procedural requirements of the Interstate Commerce Act.

An additional ground for attack upon the orders of the ICC is offered by plaintiff in argument that it is not required by law to hold motor carrier operating authority between the points involved in order to effect lawful joint rate arrangements with railroads for rail trailer-on-flatcar service. That is, even if the Commission were correct in its finding with regard to lack of operating authority such findings would not prevent the institution of lawful piggyback service in conjunction with railroads capable of providing rail service between the points involved.

In support of the contention that it holds operating authority between Oakland, Richmond and Roseville, California, and Sparks, Nevada, on the one hand, and Ogden, Utah, on the other hand, plaintiff originally relied upon a route between Oakland and Ogden by way of Twin Falls, Idaho. Use of this route is subject to the following restriction:

"Authority is restricted against the movement of traffic via Twin Falls which originates at, is destined to, or is interchanged at points on the route between San Francisco and Wells, including those points, on the one hand, and, on the other, Salt Lake City and Ogden, including those points."

In view of this restriction, plaintiff may not lawfully engage in operations between the points involved through Twin Falls. Thus the route does not furnish a basis for the proposed substituted rail service and must be rejected.

Plaintiff contended before the Commission that the restriction no longer applied to its route between San Francisco and Salt Lake City by reason of its purchase of Fuller-Toponce Truck Company. Consolidated Freightways, Inc.— Control and Merger. Fuller-Toponce Truck Company, 70 MCC 715 (1957). Although plaintiff's application to the Commission for approval of its acquisition of Fuller-Toponce was opposed by the same motor carriers which entered protests in this proceeding, the Commission approved the application. The approval, however, was conditioned by a holding that the Twin Falls restriction applied to the authority obtained from Fuller-Toponce and prohibited plaintiff from using Twin Falls as a gateway on traffic moving between points on the San Francisco–Wells segment and points on the Ogden–Salt Lake City segment either single line or by inter-line with Fuller-Toponce. Plaintiff did not seek court re-

view of this finding and indicated acceptance thereof by consummation of its transaction with Fuller-Toponce. There appears to be no reason to consider plaintiff's tardy criticism of the Commission's ruling in the Fuller-Toponce case in this matter.

■ Plaintiff takes the position that it may circumvent the restriction by use of an alternate route between Jerome, Idaho and Rupert, Idaho which avoids Twin Falls. This alternate route was granted in No. MC–42487 (Sub-No. 151), to be used as an alternate regular route for operating convenience only, on movements from Pendleton, Oregon to Pocatello, Idaho in order to avoid congested traffic in and around Twin Falls. The Commission properly held that an alternate route cannot carry any authority that the service route, to which it is an alternate, does not possess. It is clear that the restriction with respect to operations through Twin Falls attaches to the use of the alternate route between Jerome and Rupert and precludes acceptance thereof as a basis for the proposed substituted rail service.

Acquisition of rights in the manner suggested by plaintiff would obviously enable the carrier to institute a new service without the proof of convenience and necessity required by law.

■ A determination that the grant of the alternate route did not serve to eliminate the Twin Falls restriction in plaintiff's corresponding preliminary authority is dispositive of its argument that the Commission has cancelled or revoked operating authority without observing proper procedural requirements. Plaintiff could not be deprived of that which did not exist and the Commission's interpretation of the certificate granting the Jerome-Rupert operating convenience route in no way resulted in a deprivation or diminution of its authority.

Plaintiff urges consideration of a third route from Oakland to Ogden by way of Portland, Pendleton, Spokane, Butte and Pocatello which is unrestricted but travels a distance of 1,892 miles and is about 140 percent circuitous. The routes of competing protestants are only 786 miles and plaintiff concedes that it has never used the route through Spokane to serve the points involved. It is apparent that the route is not competitive or feasible as a normal service route and cannot be regarded as such. Although plaintiff contends that the Commission ignored this route in its report there is no reason to believe that any serious reliance was placed upon it until plaintiff filed its petition for reconsideration with the Commission. The circuitous nature of the route through Spokane is such that mention of it in the report was unnecessary and there was no abuse by the Commission of its discretion in denying plaintiff's petition for reconsideration.

■ We now consider the argument that the rates in question should stand irrespective of the motor carrier authority which plaintiff alleges to hold between the points in issue. Plaintiff urges that this matter should be determined here, intervenors on the other hand contend that this question need not be decided and point to the far-reaching effect a decision on this issue would have. The Government's position is that the rates in dispute are not in fact "joint-rates", since plaintiff must point to their alleged carrier rights to justify the arrangement with the railroad. The conflicting contentions can best be dealt with in the light of the language of the service which plaintiff proposed to render, the pertinent parts of which read as follows:

> "Application of this Tariff:
>
> "Unless the shipper directs that rail service shall not be performed, the motor carriers parties to this tariff may, at their option, substitute rail service between the points and via the rail carriers shown herein, *for their actually available services via highways for which such motor carriers have lawful operating rights* as common carriers via motor vehicle." (Emphasis supplied)

This language clearly indicates that plaintiff, when filing these rates, operated

under the assumption that the proposed service was to function between points which it could service under lawful motor carrier operating rights. The fact that plaintiff expressly reserved for itself the option to perform the proposed service by motor carrier is further evidence that it deemed the proposed tariff to be an integral part of its motor carrier operations. Under these circumstances a determination of whether the proposed service is to be labeled railway or motor carrier service is superfluous since plaintiff must be found to have designated it as the latter. It appears that the legality of the proposed substituted trailer-on-flatcar service depends on the legality of the motor carrier service which plaintiff offers to provide at its option. Consolidated's contention in the instant case that the trailer-on-flatcar service should be dealt with as distinct from its operating authority as motor carrier is thus without merit.

Plaintiff's application for preliminary injunction is denied and the complaint is dismissed. The temporary restraining order granted on May 6, 1959 and continued on June 19, 1959 is dissolved.